IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

—————————————————————————

SCOTT F. L.,

                          Plaintiff,

            v.                                    Civil Action No.
                                                  6:21-CV-1289 (FJS/DEP)

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.

—————————————————————————

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF

OFFICE OF PETER W.                    PETER W. ANTONOWICZ, ESQ.
ANTONOWICZ
148 West Dominick Street
Rome, NY 13440

FOR DEFENDANT

SOCIAL SECURITY ADMIN.                CANDACE LAWRENCE, ESQ.
OFFICE OF GENERAL COUNSEL             VERNON NORWOOD, ESQ.
6401 Security Boulevard
Baltimore, MD 21235


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE


REPORT AND RECOMMENDATION

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §

405(g), to challenge a determination of the Commissioner of Social

Security ("Commissioner") finding that he was not disabled at the relevant

times and, accordingly, is ineligible for the disability insurance ("DIB")

benefits for which he has applied.  The matter has been referred to me for

the issuance of a report and recommendation, pursuant to 28 U.S.C. §

636(b) and Northern District of New York Local Rule 72.3.  For the reasons

set forth below, I recommend a finding that the Commissioner's

determination resulted from the application of proper legal principles and is

supported by substantial evidence.

I.    <u>BACKGROUND</u>

Plaintiff was born in September of 1971, and is currently fifty-one

years of age.  He was forty-seven years old on September 28, 2018, the

date upon which he alleges he became disabled, and on March 20, 2019,

when he filed his application for benefits.  Plaintiff measures five feet and

eight inches in height, and weighed approximately two hundred and forty-

five pounds during the relevant period.  Plaintiff currently lives in a house in

Boonville, New York with his fiancée and their cat.

Plaintiff reports having completed one year of college, as well as a

five-year apprenticeship to become an electrician.  He also served for three

years in the United States Army working in artillery and special weapons.

Plaintiff has worked as a union electrician for numerous employers over the course of his career, and reports that he stopped working most recently both because he was laid off from his job and because he was experiencing chronic symptoms of irritable bowel syndrome ("IBS").

Plaintiff alleges that he suffers from anxiety and depression related to his diagnosed posttraumatic stress disorder ("PTSD"), as well as IBS, muscle pain, joint pain and insomnia. As is relevant to his application, plaintiff has treated primarily with sources in the Veteran's Administration ("VA") Rome Community Based Outpatient Clinic and Syracuse Medical Center.

According to the plaintiff, his PTSD causes him to experience excessive anxiety, makes him forgetful, and affects his ability to concentrate. He reports that he does not really like to interact with people and that, although he attempts to help his fiancée with chores around the house, he does not do much cleaning, and she performs the shopping for the household. Plaintiff also reports experiencing chronic IBS, which causes him to unexpectedly need to use the bathroom at least five times per day, and produces stomach cramping and heartburn. He does drive occasionally, but not for long distances because of his need to use the bathroom. Plaintiff hunts for deer occasionally on his friend's property, and

previously enjoyed fishing, although his family does not now own the property where he used to fish.

## II.    PROCEDURAL HISTORY

### A.    Proceedings Before the Agency

Plaintiff applied for DIB payments under Title II of the Social Security Act on May 20, 2019.  After a hearing, administrative law judge ("ALJ") Robyn L. Hoffman issued a decision on August 4, 2021, finding that plaintiff was not disabled.  That opinion became a final determination of the agency on October 15, 2021, when the Social Security Appeals Council ("Appeals Council") denied plaintiff's request for review of the ALJ's decision.

### B.    The ALJ's Decision

In her decision, ALJ Hoffman applied the familiar, five-step sequential test for determining disability.  At step one, she found that plaintiff did not engage in substantial gainful activity during the relevant period.  The ALJ next found at step two that plaintiff suffers from severe impairments that impose more than minimal limitations on his ability to perform basic work functions, including PTSD and alcohol use disorder.  As part of her step two finding, ALJ Hoffman also found that plaintiff's IBS, muscle pain, joint pain, back impairment, and obesity are not severe impairments.

At step three, ALJ Hoffman examined the governing regulations of

4

the Commissioner setting forth presumptively disabling conditions (the

"Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that

plaintiff's conditions do not meet or medically equal any of the listed

conditions set forth in those regulations, specifically considering Listing

12.15, which addresses trauma and stressor-related disorders.

ALJ Hoffman next surveyed the available record evidence and

concluded that, notwithstanding his impairments, plaintiff retains the

residual functional capacity ("RFC") to perform a full range of work at all

exertional levels, with the following exceptions:

> he retains the ability to understand and follow simple
> instructions and directions; perform simple tasks
> independently; and maintain attention/concentration
> for simple tasks. He can regularly attend to a routine
> and maintain a schedule; and relate to and interact
> appropriately with all others to the extent necessary
> to carry out simple tasks. The claimant can handle
> simple, repetitive, work-related stress, in that he can
> make occasional decisions directly related to the
> performance of simple tasks in a position with
> consistent job duties that do not require the claimant
> to supervise nor manage the work of others. He can
> have occasional contact with supervisors,
> coworkers, and the public.

ALJ Hoffman went on at step four to conclude that plaintiff is unable

to perform his past relevant work with the above limitations.  Proceeding to

step five, the ALJ found, relying on Medical Vocational Guideline 204.00

and Social Security Ruling ("SSR") 85-15, that plaintiff's ability to perform

work in the national economy is not significantly diminished by the nonexertional limitations resulting from his impairments. Based upon these findings, ALJ Hoffman determined that plaintiff was not disabled at the relevant times.

### C.    This Action

Plaintiff commenced this action on November 30, 2021.[1] In support of his challenge to the ALJ's determination, plaintiff argues that the ALJ (1) failed to appropriately assess whether his sleep disorder/insomnia is a severe impairment that needed to be accounted for in the RFC finding; and (2) did not properly consider the record evidence, particularly regarding plaintiff's reports of seclusiveness related to his PTSD, when assessing both whether he meets or equals Listing 12.15 and the extent to which he is limited in his ability to perform work-related functions. Dkt. No. 11.

Oral argument was conducted in this matter, by telephone, on November 30, 2022, at which time decision was reserved.

### III.   DISCUSSION

### A.    Scope of Review

---

[1]    This action is timely, and the Commissioner does not argue otherwise. It has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

A court's review under 42 U.S.C. § 405(g) and 1383(c)(3) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  Where there is reasonable doubt as to whether an ALJ has applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting

7

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

      B.    <u>Disability Determination: The Five-Step Evaluation Process</u>

The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other

8

> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. The first step requires a determination of whether the claimant is engaged in substantial gainful activity ("SGA"); if so, then the claimant is not disabled, and the inquiry need proceed no further. *Id.* §§ 404.1520(b), 416.920(b). If the claimant has not worked at a level constituting SGA, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).  If it is determined that it does, then as a final matter, at step five the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of performing other available work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.    Analysis

A.    Plaintiff's Insomnia

Plaintiff first argues that ALJ failed to perform a proper assessment of whether his insomnia is a severe impairment or imposes any limitations on his work-related functioning.  Dkt. No. 11, at 10-12.  Plaintiff argues that the evidence in the record shows that his difficulty with sleeping causes deficits

in focusing, concentrating, staying on task or staying awake during the workday, and notes that, despite these claimed effects, the ALJ mentioned that condition only once in her decision, and did not explain why the evidence fails to indicate additional limitations.  *Id.*  Plaintiff's arguments are without merit.

In her assessment at step two, when discussing her finding that plaintiff's PTSD constitutes a severe impairment, the ALJ acknowledged that plaintiff complained that such impairment resulted in "anxiety, nightmares, sleep issues, episodic irritability, seclusiveness, and hypervigilance."  Administrative Transcript ("AT") at 16.[2]  Accordingly, contrary to plaintiff's insistence that the impact of his difficulties with sleep was not addressed, the ALJ explicitly indicated that she considered plaintiff's sleep issues as an outgrowth of his PTSD.  Plaintiff has not pointed to evidence that would suggest that his insomnia was caused in any material part by a condition that is independent of his PTSD.  Although plaintiff does point to a notation from 2017 in which it was noted that his reported history strongly suggested sleep apnea, he does not indicate any further testing or treatment to establish such a condition, and subsequent

---

[2]    The administrative transcript is found at Dkt. No. 8, and will be referred to throughout this decision as "AT __."

treatment notes generally discuss sleep disturbances related to nightmares, restlessness, anxiety, and talking or walking in his sleep that contributed to his sleep quality, with no mention of sleep apnea or loss of breath.  Dkt. No. 11, at 4-6.  Indeed, plaintiff's own recitation of the treatment evidence acknowledges that his sleep quality improved when he was on medications that helped control his nightmares.  *Id.* at 5.  Because plaintiff has not offered medical evidence to substantiate that sleep apnea, or any other impairment apart from his PTSD, contributed to his sleep difficulties, I find that plaintiff has not shown that the ALJ's consideration of those issues as part of his PTSD was inappropriate.

Nor does the evidence suggest that the ALJ failed to account for any greater deficits in plaintiff's abilities as a result of his poor sleep.  In December of 2017, although he reported ongoing insomnia with an inability to sleep through the night, it was noted that he was not taking his medications regularly and had not increased the dose of Prazosin as instructed.  AT 425-26.  Plaintiff also noted at that time that his erratic work schedule and travel contributed to his sleep difficulties.  AT 426.  In April of 2018, plaintiff reported ongoing erratic sleep with occasional nightmares, and it was noted that he was still taking Prazosin 2mg for his nightmares but did not wish to titrate up to a recommended higher dose.  AT 419.

On June 21, 2019, consultative examiner Dr. Sara Long noted plaintiff's reports of difficulty falling and staying asleep due to nightmares related to his PTSD, but observed that his behavior was normal, his thought process was clear and goal directed, his orientation, attention, concentration, and memory were all intact, and he appeared to have average intellectual functioning with a good fund of information.  AT 457-58.  She concluded that there was no limitation in plaintiff's ability to maintain concentration and attention, to adhere to a schedule, or to perform tasks and make decisions, although she acknowledged that his PTSD might sometimes cause mild or moderate difficulty in regulating his emotions.  AT 459.

After a gap in treatment of more than a year, plaintiff was next seen at the VA Medical Center in August of 2019, reporting increased symptoms, including worsened sleep, since being off his medication, and he was restarted on Prazosin.  AT 667, 669.  In September of 2019, plaintiff reported that restarting Prazosin decreased his nightmares and that his sleep was slightly improved, although he indicated that he struggled with motivation and energy during the day.  AT 661.  His mental status examination did not reveal any difficulty with thought process, concentration, or orientation, and his physician advised him to increase the

dose of Prazosin to see if that improved his sleep further. AT 661, 663. In October of 2019, plaintiff reported that an increase in Prazosin resulted in him not remembering his dreams, sleeping better, and feeling more rested with more energy in the mornings, despite reports by his partner that he is restless in his sleep. AT 726. However, in January of 2020, plaintiff indicated that he had decreased the dose of Prazosin because it was causing dizziness, and he was currently experiencing nightmares only once per week. AT 779. At a telephone appointment in July of 2020, plaintiff reported an increase in the intensity of his nightmares with erratic nighttime sleep, and agreed to again increase Prazosin. AT 802-03.

The record therefore shows that, although plaintiff experienced nightmares related to his PTSD that impacted his ability to sleep, such nightmares were significantly reduced with medication compliance, and there is no corroboration for any resulting functional deficits in his ability to concentrate or attend as a result of poor sleep. Indeed, the record from prior to the alleged onset date shows that plaintiff was continuing to work as an electrician even while reporting a longstanding history of difficulty sleeping and nightmares. In sum, plaintiff has not met his burden to show that the record supports greater limitations related to his insomnia than are accounted for in the ALJ's RFC. *See Karen P. v. Kijakazi*, 20-CV-0841,

2021 WL 5989620, at *9 (N.D.N.Y. Nov. 29, 2021) (Peebles, M.J.);

*Adamnma T. V. Comm'r of Soc. Sec.*, 20-CV-0173, 2020 WL 6637598, at

*4 (N.D.N.Y. Nov. 12, 2020) (Dancks, M.J.).  I therefore find that the ALJ

properly assessed plaintiff's reports of insomnia and sleep difficulties as a

symptom of his PTSD, and that substantial evidence supports her finding

that no greater limitations are warranted than those set forth in the RFC

finding.

B.    The ALJ's Assessment of the Evidence

Plaintiff next argues that the ALJ failed to properly assess and weigh

the medical evidence in the record because she (1) erroneously found that

plaintiff was not avoidant or seclusive when assessing whether plaintiff

meets or equals Listing 12.15, based on an alleged inappropriately

selective assessment of the treatment record, (2) failed to recognize that

noted improvements were short-lived and did not represent an accurate

picture of plaintiff's general overall functioning, and (3) downplayed other

evidence that is relevant to the Listing analysis, including references to

hypervigilance, irritability, avoidance and seclusiveness.  Dkt. No. 11, at 12-

15.

Plaintiff's attempts to manufacture errors in the ALJ's assessment of

the record are not persuasive.  I note initially that it is well-established that

an ALJ need not discuss every piece of evidence in the record in order to

show that it was considered.  *Brault*, 683 F.3d at 448.  In making her

findings related to both Listing 12.15 and the RFC, the ALJ discussed

various records showing that plaintiff routinely presented with normal

thought process and content, intact attention, concentration and memory,

good eye contact, and normal behavior, and plaintiff has not pointed to any

contrary evidence that suggests the ALJ misrepresented the record in that

respect.  The fact that plaintiff indeed reported symptoms of hypervigilance,

irritability, avoidance and seclusiveness at times does not by itself indicate

that the ALJ was required to include greater limitations, and, finding that

there is substantial evidence in the record to support the ALJ's findings, it is

not the function of this court to either reweigh the evidence or to second-

guess the ALJ's weighing of that evidence.  *Shyla D. v. Kijakazi*, 20-CV-

1295, 2022 WL 798158, at *3 (N.D.N.Y. Mar. 16, 2022) (Stewart, M.J.).

Nor does it appear that the ALJ relied on any brief period of

improvement while ignoring the larger picture presented by the record.

Indeed, plaintiff was generally noted to have decreases in his nightmares,

irritability, and mood issues when he remained compliant with his

prescribed medication regimen, and the record overall does not

substantiate significant functional effects even during times when his

symptoms were less controlled.  *See e.g.*, AT 419 (noting that, although there was room for improvement, plaintiff was tolerating stressors better and not losing his temper as often on 100mg of Zoloft); 425 (acknowledging plaintiff has not been taking his medications regularly but that Zoloft makes him less irritable and anxious when he does take it), 661 (reporting depressed mood with avoidance and hypervigilance, but slight improvement in anxiety with increased dose of Zoloft); 667 (reporting worsened symptoms after being off medications for more than a year); 726 (reporting that Zoloft 150mg has improved his mood, decreased anxiety and made him less irritable, although he remains fairly avoidant and seclusive); 779 (reports Zoloft continues to manage his mood and anxiety levels, although he has been more "blue" due to wintertime and more stressed because of dealing with his union and his disability application); 803 (reporting that his mood is manageable on Zoloft although he experiences some ongoing anxiety, episodic irritability, avoidance, seclusiveness, and hypervigilance).

I find also that the ALJ's findings related to both Listing 12.15 and the RFC are supported by the record opinion evidence.  Notably, the ALJ's findings are more limiting than those opined by the state agency consultants, who found that plaintiff's mental impairments do not rise to the

level of a severe impairment.  The ALJ indicated that she found those

opinions to be persuasive, but concluded that plaintiff should be considered

more limited based on a consideration of his subjective complaints, to the

extent those complaints were consistent with the record evidence.  AT 19.

The ALJ also found that the opinion from Dr. Long, which, as was

discussed above, indicated very few limitations in plaintiff's ability to

function, was persuasive.  AT 21.  Plaintiff notably has not challenged the

ALJ's choice to rely on Dr. Long's assessment, nor provided any reason for

this court to believe that the ALJ erred in doing so.  These opinions

therefore provide the necessary substantial evidence to support the ALJ's

finding that plaintiff neither meets or equals a Listing nor requires greater

work-related limitations.

The ALJ also supported her finding that plaintiff had relatively mild or

moderate limitations by citing to his reported ability to perform a wide range

of activities, including fishing, deer hunting, golfing, maintaining his own

grooming, cooking, cleaning, doing laundry, shopping, and socializing.  AT

20, 458, 720.  This range of activities further supports the ALJ's findings

related to both Listing 12.15 and the RFC.  *See Krystle H. v. Comm'r of*

*Soc. Sec.*, 20-CV-0855, 2022 WL 888225, at *7 (N.D.N.Y. Mar. 25, 2022)

(Dancks, M.J.) (noting that an ALJ is required to consider a plaintiff's

reported activities of daily living as part of the evidence when formulating the RFC finding and that the ALJ's consideration of those activities was proper and contributed to the substantial evidence supporting the decision); *Karen M. v. Comm'r of Soc. Sec.*, 17-CV-0893, 2018 WL 4642696, at \*10-11 (N.D.N.Y. Sept. 27, 2018) (Baxter, M.J.) (finding no error in the ALJ's assessment of the evidence that included a consideration of her abilities to dress, bathe, groom, take care of her children, regularly go shopping, take public transportation, and cook, clean and do laundry with assistance).

Because substantial evidence supports the ALJ's findings and plaintiff has not shown that a rational factfinder would be compelled to weigh the evidence differently, and further because it does not appear that the ALJ misrepresented or otherwise failed to consider any pertinent evidence, I find no error in the ALJ's findings regarding either Listing 12.15 or her RFC finding.

IV.    SUMMARY AND RECOMMENDATION

After considering the record as a whole and the issues raised by the plaintiff in support of his challenge to the Commissioner's determination, I recommend a finding that the determination resulted from the application of proper legal principles and is supported by substantial evidence. Accordingly, it is hereby respectfully

RECOMMENDED that the Commissioner's decision be AFFIRMED, defendant's motion for judgment on the pleadings (Dkt. No. 14) be GRANTED, plaintiff's motion for judgment on the pleadings (Dkt. No. 11) be DENIED, and plaintiff's complaint be DISMISSED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  <u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:    December 7, 2022
          Syracuse, NY

DAVID E. PEEBLES
U.S. Magistrate Judge